# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 23-CR-77-1-JPS |
| v. | Case No. 23-CR-77-15-JPS |
| RONNELL BOWMAN and RONNIE JACKSON, | **ORDER** |
| Defendants. | |

## 1.      INTRODUCTION

Defendants Ronnell Bowman ("Bowman") and Ronnie Jackson ("Jackson") (together, "Defendants") are charged in this matter with conspiracy to commit murder for hire and using a firearm during the commission of that offense. ECF No. 1 at 10–11. They are further charged, along with other co-defendants, with participating in a conspiracy to possess, sell, or transfer firearms in various illegal ways. *Id.* at 12–13. Additionally, Bowman is charged with both substantive mail fraud and mail fraud conspiracy; Jackson is charged in the mail fraud conspiracy, but not with substantive mail fraud. *Id.* at 3–7.

Now before the Court are various pretrial motions from Defendants:

- Each moves for a bill of particulars, requesting further information about acts they allegedly committed in furtherance of one or more of the conspiracies in which they allegedly participated, ECF Nos. 514 and 516;

- Each moves to sever the charges of conspiracy to commit murder for hire and use of a firearm during that offense from the other charges that they are facing, ECF Nos. 517 and 528;

- Jackson moves to compel disclosure of any reports by and the identities of cooperating witnesses, ECF Nos. 518 and 526;

- Jackson moves to dismiss the firearms conspiracy charge, ECF No. 519; and

- Each moves to strike language in the Indictment as prejudicial surplusage, ECF Nos. 520 and 529.

The Government filed an omnibus brief opposing each of the motions. ECF No. 543. Defendants also filed omnibus reply briefs. ECF Nos. 556, 557. For the reasons stated herein, each motion will be denied, with the denial of Jackson's motions to compel to operate without prejudice.

## 2.    BACKGROUND

The introductory section of the Indictment alleges that Defendants and others were members of a street gang—the Wild 100s—in the Milwaukee, Wisconsin area, and as part of that gang engaged in crimes of violence, gun and drug offenses, fraud, and other criminal activity. ECF No. 1 at 2.

The Indictment goes on to allege that Defendants and others engaged in a scheme to defraud the United States to obtain millions of dollars in COVID-19 unemployment insurance benefits to which they were not entitled. *Id.* at 2–5. It alleges that Defendants then used the proceeds of this fraudulent scheme to solicit murder for hire and to purchase firearms as well as other items such as controlled substances, jewelry, clothing, and vacations. *Id.* at 5. In its pretrial motion briefing, the Government specifically characterizes this as gang activity: "Defendants, and other

members of the Wild 100s gang, then used the fraud proceeds to fund their gang-related activities, including engaging in multiple firearms offenses and soliciting a murder-for-hire." ECF No. 543 at 2.

As noted above, Defendants are both charged in Count One with participating in this mail fraud scheme. ECF No. 1 at 3–5. Bowman is charged in Count Two with one of the underlying mail fraud counts. *Id.* at 7.

Defendants are each further charged in Count Twenty-Seven with conspiracy to commit murder for hire by offering a monetary reward to have an individual, N.B., killed. *Id.* at 10. Count Twenty-Eight alleges that Defendants used and discharged a firearm in relation to Count Twenty-Seven, causing the death of N.B. *Id.* at 11.

Count Twenty-Nine charges Defendants, thirteen co-defendants, and unnamed "others" with a firearms conspiracy that involved: selling and disposing of firearms to persons prohibited from having them under 18 U.S.C. § 922; knowingly transferring firearms with knowledge that such firearms would be used to commit crimes of violence or drug trafficking crimes; and knowingly transferring machineguns. *Id.* at 12–13. The firearms conspiracy allegedly took place from July 2020 into April 2023. *Id.* at 12. The Indictment charges a single overt act in furtherance of this conspiracy:

> On or about December 18, 2020, [co-defendant] Javonte Cotton sent a message to Ronnell Bowman asking to "swap" his Glock firearm and stated that, "we just found six more switches," meaning machineguns.

*Id.* at 13. Counts Thirty through Thirty-Two, Thirty-Four through Thirty-Nine, and Forty-One through Forty Three charge some of the co-defendants named in Count Twenty-Nine—but not Bowman or Jackson—with various

gun offenses, and allege that these offenses occurred during the time frame stated in Count Twenty-Nine. *Id.* at 14–16, 18–23, 25–27.

Since the grand jury returned the Indictment in April 2023, ECF No. 1, the Government has turned over a large amount of discovery material to Defendants and their co-defendants, representing in March 2024 that it completed its discovery production. *See* ECF Nos. 224, 266, 357 (status conference minute entries commenting on disclosure of discovery).

### 3. ANALYSIS

#### 3.1 Defendants' Motions for Bill of Particulars

The Court first addresses Defendants' motions for a bill of particulars. ECF Nos. 514, 516. A bill of particulars is a "written statement providing the defendant with detailed information concerning the charges against him." *United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013); *see also United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991) ("[A] bill of particulars [is] a more specific expression of the activities defendant is accused of having engaged in which are illegal."). On a defendant's motion, the Court may direct the Government to provide such a bill. Fed. R. Crim. P. 7(f).

In contemplating a motion for a bill of particulars, "the key question is whether the defendant was sufficiently apprised [by the indictment] of the charges against him in order to enable adequate trial preparation." *Vaughn*, 722 F.3d at 927 (quoting *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008)). "[A] bill of particulars is 'unnecessary where the indictment sets forth the elements of the charged offenses and provides sufficient notice of the charges to enable the defendant to prepare his defense." *Id.* (quoting *United States v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003) and citing *United States v. Kendall*, 665 F.2d 126, 136 (7th Cir. 1981)). It

is also unnecessary "if the information the defendant seeks is readily available through alternate means such as discovery." *Id.* (citing *Blanchard*, 542 F.2d at 1140 and *United States v. Redd*, 167 F. App'x 565, 568 (7th Cir. 2006)).[1]

Jackson moves pursuant to Rule 7 to require that the Government disclose more information related to his involvement in Count Twenty-Nine, the firearms conspiracy. ECF No. 521. He argues that the Indictment fails to provide any information about his involvement in the offense charged in Count Twenty-Nine, depriving him of the ability to formulate a defense to this count or to prepare for trial. *Id.* at 3. Conceding that he is not "entitled to know . . . all the details on how [the offense in which he is charged] would be proved," he argues that he nonetheless "may still obtain 'the factual proof supporting the charges, if vital to his defense.'" *Id.* (quoting *United States v. Mosley*, 786 F.2d 1330, 1335 (7th Cir. 1986)). He therefore requests disclosure of the date that the conspiracy allegedly began, the date that he allegedly joined it, details of the conspiratorial act(s) in which he specifically was allegedly involved, the statute(s) he purportedly violated, and the names of "all individuals," indicted or not, involved in each act in furtherance of the conspiracy. *Id.* at 2.

Similarly, Bowman moves under Rule 7 for a bill of particulars with respect to the acts done in furtherance of each of the conspiracies in which he is charged: Count One, the mail fraud conspiracy; Count Twenty-Seven,

---

[1] "The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). The Government has not challenged the timeliness of Defendants' motions, and the Court does not decide the motions on this basis. But it notes that Defendants filed their motions well outside this time frame, and the Court sees no reason why they could not have been filed sooner.

the murder-for-hire conspiracy;[2] and Count Twenty-Nine, the firearms conspiracy. ECF No. 514 at 4–5. Similar to Jackson, he argues that the Indictment does not adequately apprise him of his precise involvement in these charges in advance of trial. *Id.* at 3–4. He also appears to be asking for details about the alleged relationship between Count One (and possibly the substantive mail fraud counts underlying it as alleged in Count Two) and Counts Twenty-Seven, Twenty-Eight, and/or Twenty-Nine. *Id.* at 4–5.[3] Like Jackson, he wants the dates that the alleged conspiracies began, details of the conspiratorial acts and identities of co-conspirators, and dates when others joined the conspiracy; he also wants information about "any overt acts" he is alleged to have undertaken "in the planning of the conspiracy to commit a murder for hire" and in the commission of the firearms conspiracy. *Id.* at 5.

The Government responds that the Indictment is sufficient because "nothing in the case law requires [it] to provide extensive detail about each overt act done in furtherance of the conspiracy or . . . the facts the [G]overnment will use to prove those overt acts at trial." ECF No. 543 at 4 (citing ECF Nos. 521 at 3 and 514 at 4). To the contrary, the Government argues that Defendants' motions are an "attempt[] to obtain evidentiary

---

[2]Bowman references Count Twenty-Eight in relationship with Count Twenty-Seven, portraying Count Twenty-Eight as part of the "conspiracy to commit a murder for hire." ECF No. 514 at 4. Count Twenty-Seven requires the Government to allege and prove that Defendants (1) committed a crime of violence and (2) knowingly used a firearm during and in relation to that crime. Seventh Cir. Pattern Crim. Jury Instructions 924(c)(1)(A) (2023). That is, it requires the Government to prove the underlying offense in Count Twenty-Seven. It is not clear whether or why Bowman seeks a bill of particulars as to Count Twenty-Eight specifically, but to the extent that he does, the request is meritless. *See infra* note 4.

[3]The Government understands Bowman to be requesting details as to only Counts Twenty-Seven and Twenty-Nine. ECF No. 543 at 3.

details and factual proffers," which may not be done through a bill of particulars. *Id.* at 4–5 (collecting cases). Moreover, the Government argues that it has given Defendants what they need to prepare for trial through discovery disclosure and has "taken multiple steps to assist the Defendants in their review of the evidence in this case," including by "provid[ing] a written overview of the evidence supporting the charges in Counts Twenty-Seven and Twenty-Eight"; discussing the evidence in meetings, phone calls, and emails with defense counsel; and presenting "reverse proffer[s] . . . regarding the specific evidence supporting each of the charges." *Id.* at 5–6.

In reply, Jackson acknowledges that the Government has turned over discovery material but contends that the material "does not advise [him] of the conduct which constitutes acts in . . . furtherance" of Count Twenty-Nine, the firearms conspiracy. ECF No. 556 at 1. He also says that "whether the conduct set forth in the conspiracy described in [C]ounts 27 and 28 is independent of that set forth in Count 29" remains unclear—an argument he did not raise in his opening brief. *Id.* at 1–2.

The Court first examines whether the Indictment puts Bowman and Jackson adequately on notice of the charged offenses with which they take issue. "An indictment which includes each of the elements of the offense charged, the time and place of the accused's conduct which constituted a violation, and a citation to the statute or statutes violated is sufficient to pass this test." *United States v. Jackson*, No. 20-CR-229, 2023 WL 3903758, at *8 (E.D. Wis. Feb. 6, 2023) (citing *Kendall*, 665 F.2d at 134). A defendant is not entitled "to know the details of how the government will prove its case." *United States v. Bloom*, No. 12 CR 409, 2013 WL 437962, at *4 (N.D. Ill. Jan. 2, 2013) (collecting cases), *report and recommendation adopted as modified*, No. 12 CR 409, 2013 WL 449761 (N.D. Ill. Feb. 5, 2013).

The Court finds that Count Twenty-Nine, on which both Defendants seek more particular information, is sufficiently alleged. A charge of conspiracy under 18 U.S.C. § 371, as charged in Count Twenty-Nine, requires the Government to allege (and eventually prove) "(1) that the charged conspiracy existed, (2) that the defendant knowingly and willfully joined the conspiracy with intent to further the conspiracy and (3) that an overt act was committed in furtherance of the conspiracy." *United States v. Kruse*, 606 F.3d 404, 408 (7th Cir. 2010) (citing *United States v. Presbitero,* 569 F.3d 691, 704 (7th Cir. 2009)); *see also* Seventh Cir. Pattern Crim. Jury Instructions 5.08A (2023) ("*One of* the conspirators committed an overt act in an effort to advance [the] goal[s] of the conspiracy . . . ." (emphasis added)). The only overt act alleged occurred between Bowman and a different co-defendant, ECF No. 1 at 13, but this is of no moment, because as *Kruse* explains, the Indictment need not allege that *each* named defendant committed an overt act in furtherance of the alleged conspiracy. 606 F.3d at 408. Moreover, the Indictment charges that, from July 2020 into April 2023 in Wisconsin and Texas, Defendants and other named co-defendants as well as unnamed "others" "knowingly and willfully conspired" to violate various enumerated firearms laws. ECF No. 1 at 12 (citing 18 U.S.C. §§ 922(d)(1), 924(h), 922(o), 922(g), and 2(a)). Thus, the Indictment sufficiently alleges the elements of a conspiracy offense, the time and place in which Defendants allegedly participated in the conspiracy, and what laws they allegedly violated or conspired to violate in doing so. *Jackson*, 2023 WL 3903758, at *8.

For the same reasons, Count Twenty-Seven, the conspiracy to commit murder for hire—with respect to which Bowman specifically requests a bill of particulars—is sufficiently alleged in the Indictment.

"[T]his offense encompasses two elements: 'traveling in, or using a facility of, interstate or foreign commerce . . . (2) with the intent that a murder for hire be committed.'" *United States v. Caguana*, 884 F.3d 681, 687 (7th Cir. 2018) (quoting *United States v. Dvorkin*, 799 F.3d 867, 875 (7th Cir. 2015)). The Indictment tracks these elements, alleging that Defendants arranged the murder plot through "communications over social media platforms and by cellular telephones operating on interstate networks," and that they intended to and actually did bring about N.B.'s death. ECF No. 1 at 10. The time period and place of the offense and the relevant statutes are also stated. *Id.*[4]

Similarly, Bowman appears to request a bill of particulars on Count One, *see* ECF No. 514 at 4 ("State all instances in which the [G]overnment alleges a conspiracy began (the indictment alleges three (3) conspiracies) . . . . ", but this count is also adequately alleged in the Indictment. "To prove mail fraud, the Government [must] show '(1) a scheme to defraud, (2) use of the mails, and (3) [the defendant's] participation in the scheme with the intent to defraud.'" *United States v. Agbi*, 84 F.4th 702, 708 (7th Cir. 2023) (quoting *United States v. Dingle*, 862 F.3d 607, 614 (7th Cir. 2017)). Meanwhile, a mail fraud conspiracy charge requires allegations "1) that the conspiracy to commit mail fraud existed; 2) that the defendant became a member of the conspiracy to commit mail fraud with an intention to further that conspiracy; and 3) that an overt act

---

[4] Count Twenty-Eight requires the Government to allege and prove that Defendants (1) committed a crime of violence and (2) knowingly used a firearm during and in relation to that crime. Seventh Cir. Pattern Crim. Jury Instructions 924(c)(1)(A) (2023). As with Count Twenty-Seven, Count Twenty-Eight sufficiently alleges the relevant elements, time and place of offense, and offense statutes, ECF No. 1 at 11, so no bill of particulars is warranted on this count.

was committed by at least one conspirator in furtherance of the conspiracy to commit mail fraud." *Id.* at 709 (quoting *United States v. Sims*, 329 F.3d 937, 943 (7th Cir. 2003)). The Indictment's language tracks these elements in Count One and by incorporating Count Two, which together lay out a scheme by which Bowman and co-defendants are alleged to have engaged in an intentional scheme to submit fraudulent unemployment benefit claims to California and other states, and then to have received those benefits on debit cards via United States mail. ECF No. 1 at 3–7. It names the specific date and place on which Bowman is alleged to have received a debit card containing ill-gotten benefits. *Id.* at 7. It also lists the relevant statutes. *Id.* at 5, 9.

Having found that the Indictment sufficiently apprises Defendants of the conspiracy offenses charged against them in Counts One, Twenty-Seven, and Twenty-Nine, the Court sees no reason to grant their requests for a bill of particulars. *Vaughn*, 722 F.3d at 927. This conclusion is reinforced by the availability of discovery material to Defendants. *Id.* (citing *Blanchard*, 542 F.2d at 1140 and *Redd*, 167 F. App'x at 568). Bowman has made no argument that "the information [he] seeks is [not] readily available through alternate means such as discovery." *Id.* And Jackson's assertion that the discovery he has received from the Government "does not advise" him which of his own acts were allegedly in furtherance of Count Twenty-Nine, the firearms conspiracy, ECF No. 556 at 1, is undeveloped and unpersuasive. First, as noted above, even if Jackson personally did not commit an overt act in furtherance of the alleged conspiracy, this would not prevent a conspiracy charge against him, because the Government has alleged that he knowingly and willfully joined the conspiracy with intent to further it. *Kruse*, 606 F.3d at 408; *see also infra* Section 3.4. Second, Jackson

does not seem to argue that the disclosed discovery material does not contain information about Jackson's alleged joining of or acts in furtherance of the conspiracy; rather, he appears to argue that the Government is not indicating what aspects of Jackson's conduct, as documented in the discovery, it will rely on at trial. This is not a basis for ordering a bill of particulars. While Jackson is entitled to know "the theory of the government's case," *Bloom*, 2013 WL 437962, at *2 (quoting *Kendall*, 665 F.2d at 135), a bill of particulars is not required simply because it would "make [the defendant's] trial preparation easier" by pointing him to where, in the discovery, the relevant information resides. *Jackson*, 2023 WL 3903758, at *8. This conclusion rings even more true when considering the numerous steps that the Government has taken to assist Defendants in accessing and managing the discovery in this case, ECF No. 543 at 5–6, and the fact that Defendants have had most if not all of the discovery material in this case since March 2024. *See* ECF No. 357 at 1.

To the extent that Bowman is requesting disclosure of the particulars of the relationship between Count One, the mail fraud conspiracy, and the other conspiracies in Counts Twenty-Seven and Twenty-Nine, ECF No. 514 at 4–5—perhaps in light of the Government's position that the proceeds of the mail fraud conspiracy funded the other conspiracy activities, ECF No. 543 at 2—the request is denied. He seems to be requesting that the Government show why it has brought all of these charges together, but he has not provided any legal authority in support of why this request is properly raised through motion for a bill of particulars. Requests in this vein are better addressed through Defendants' motions to sever. Similarly, Jackson's request for clarification as to "whether the conduct set forth in the conspiracy described in [C]ounts 27 and 28 is independent of that set forth

in Count 29," ECF No. 556 at 1–2, is misplaced. First of all, he improperly raises the argument for the first time in his reply brief, *United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008) (citations omitted), and moreover if he believed those counts were multiplicative, he should have raised such an argument in a different pretrial motion. Fed. R. Crim. P. 12(b)(3)(B)(ii).

For all these reasons, Defendants' motions for a bill of particulars, ECF Nos. 514 and 516, will be denied. All of this said, the Court acknowledges that Defendants' attorneys face no easy task "given the complexity of the charges, the massive volume of discovery, and the [multi-]year duration of the alleged scheme[s]." *Bloom*, 2013 WL 437962, at *4. The case is set for trial about a month from now, the preparation for which requires the Government to organize its evidence into an exhibit list. ECF No. 500 at 3. The Court trusts that this requirement as well as ongoing cooperation between counsel will ensure that Defendants can adequately prepare for trial. Finally, if Defendants believe that the Government intends to introduce, or introduces at trial, evidence that was not turned over in discovery, they may move to exclude the evidence. Fed. R. Crim. P. 16(d)(2).

### 3.2    Defendants' Motions to Sever Counts

Defendants next move the Court to sever Counts Twenty-Seven and Twenty-Eight, the murder-for-hire conspiracy and the related firearm count, from all the other counts in which they are charged and to order separate trials on each group of counts. ECF No. 522 at 3; ECF No. 528 at 3.[5]

---

[5]The motions' titles refer to severance of counts *and defendants*. ECF No. 522 at 1; ECF No. 528 at 1. But as far as the Court can discern, neither Bowman nor Jackson has requested that he be tried separately from his counterpart. Bowman, in fact, states in his reply brief that "a single trial for the alleged murder-for-hire is appropriate." ECF No. 557 at 5. The Court therefore understands the motions to be requesting that Defendants be tried on Counts Twenty-Seven and Twenty-

An indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, . . . are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "If the joinder of offenses . . . appears to prejudice a defendant . . . , the [C]ourt may order separate trials of counts . . . ." Fed. R. Crim. P. 14(a).

To evaluate whether joinder of offenses is proper, the Court looks at whether the offenses share "categorical, not evidentiary similarities." *United States v. Alexander*, 135 F.3d 470, 476 (7th Cir. 1998) (quoting *United States v. Coleman*, 22 F.3d 126, 133 (7th Cir. 1994)); *see also United States v. Taylor*, 293 F. Supp. 2d 884, 901 (N.D. Ill. 2003)) ("Whether charged offenses fit into [Rule 8(a)'s] categories is determined by the face of the indictment, not the evidence adduced at trial." (citing *Coleman*, 22 F.3d at 134)). "[T]here is a strong policy preference in favor of the joinder of qualifying charges[,] and [Rule 8(a)] must be broadly construed toward that end." *Alexander*, 135 F.3d at 476 (citing *United States v. Woody*, 55 F.3d 1257, 1267 (7th Cir. 1995) and *United States v. Archer*, 843 F.2d 1019, 1021 (7th Cir. 1988)).

If joinder depends on Rule 8(a)'s "same or similar character" category, the subject offenses must be "of like class." *Id.* (quoting *Coleman*, 22 F.3d at 133 and collecting cases). "[B]ecause the words common scheme or plan are self defining, courts generally permit joinder under this test where the counts grow out of related transactions." *United States v. Salinas*, No. 09-CR-185, 2009 WL 3148727, at *2 (E.D. Wis. Sept. 25, 2009) (quoting

---

Eight separately from all the other counts in which they are charged, but not that Defendants be tried separately from one another on any count.

*United States v. Jawara,* 474 F.3d 565, 574 (9th Cir. 2007) (internal bracketing omitted)).

Defendants contend that the face of the Indictment does not support a finding that the counts in which they are charged are of the same or similar character or part of a common plan or scheme. ECF No. 522 at 7–8;[6] ECF No. 528 at 5–7 (Bowman brief asserting that the Indictment "does not connect what overt acts or how Counts 27-28 are part of the 'common scheme or plan to further' the two separate conspiracies outline[d]" in Counts One and Twenty-Nine and that the mail fraud conspiracy and murder-for-hire conspiracy were not "being perpetrated by virtue of either possession of drugs or firearms"); ECF No. 556 at 2; ECF No. 557 at 4. Bowman further argues that joinder of Counts Twenty-Seven and Twenty-Eight with the rest of the counts will prejudice him at trial and that judicial economy is not a relevant consideration for joinder in this instance because most co-defendants in this case have resolved their charges short of trial. ECF No. 557 at 3, 5.

The Government does not argue that Counts Twenty-Seven and Twenty-Eight, the murder-for-hire conspiracy and the related firearm offense, are of a similar character to Counts One and Twenty-Nine (in which both Defendants are charged) or Count Two (in which Bowman only is charged). Rather, it asserts that all these charges are "inextricably linked"

---

[6]Jackson's opening brief focuses on how Counts One, the mail fraud conspiracy, and Twenty-Nine, the firearms conspiracy, are not apparently related to one another, and he stresses that he is "not charged in any substantive drug or firearm transactions related to either conspiracy." ECF No. 522 at 7. This argument is irrelevant to the relief he seeks, which is severance of Counts Twenty-Seven and Twenty-Eight from the rest of his charges.

and, in the parlance of Rule 8(a), "part of a common scheme or plan." ECF No. 543 at 7–8. It argues that the Indictment says as much by charging that

> Bowman and Jackson conspired with each other and others to commit mail fraud by submitting fraudulent unemployment insurance claims . . . [,] [by] fraudulently obtain[ing] millions of dollars of federal pandemic unemployment assistance . . . benefits . . . [,] [and by] subsequently us[ing] those fraudulently obtained funds to purchase, among other things, firearms, controlled substances, jewelry, clothing, vacations, and to solicit murder for hire.

*Id.* at 8–9. It goes on to provide an overview of the evidence that it will introduce at trial to prove this chain of events, including "testimony that Bowman was able to make the offers to pay $50,000 for the killing of the rival gang member's family and associates because [he] made substantial sums of money from his involvement in the COVID-19 unemployment insurance fraud scheme" and testimony "that Bowman and his co-conspirators used the fraud proceeds to purchase firearms" which they then "transferred and sold" for criminal purposes. *Id.* at 9–12. It also argues that its witnesses cannot testify as to the murder-for-hire conspiracy without testifying to the mail fraud and firearms conspiracies, and vice versa. *Id.* at 13.

The Court agrees with the Government that joinder of all charges asserted against Defendants in the Indictment was appropriate and that severance of Counts Twenty-Seven and Twenty-Eight is unwarranted. The Government does not rely on the "same or similar character" basis for joinder, nor could it—mail fraud is obviously different than firearm offenses and murder for hire, requiring the Government to prove different elements, *see supra* Section 3.1, and to present different evidence. The Court

accordingly disregards Defendants' arguments that joinder is improper on this basis.

Joinder of all counts asserted against Defendants is proper because the offense conduct is alleged to be "part[] of a common scheme or plan." Fed. R. Crim. P. 8(a). The Indictment says as much when it alleges in Count One that "[D]efendants used the [unemployment] funds they fraudulently obtained to purchase, among other things, firearms, . . . and to solicit murder for hire." ECF No. 1 at 5. This is not a case where "[t]he indictment itself offers nothing . . . from which one might permissibly infer a connection between the [various] criminal acts . . . ." *United States v. Hubbard*, 61 F.3d 1261, 1270 (7th Cir. 1995) (citing *Coleman*, 22 F.3d at 124 and *United States v. Velasquez*, 772 F.2d 1348, 1354 (7th Cir. 1985)). The Indictment makes that connection (or at least the Government's theory of it) clear.

The Government's factual proffer in its opposition brief—in which it indicates that it will introduce testimony that illustrates a direct link between Defendants' participation in a fraud scheme with their participation in murder for hire and firearms offenses, ECF No. 543 at 8–13—bolsters this conclusion. *See, e.g.*, *Taylor*, 293 F. Supp. 2d at 901–02 (finding that counts of being a felon in possession of a firearm, robbery, and murder were properly joined as part of a common scheme or plan under Rule 8(a) because "the guns that the defendants [we]re charged with possessing [we]re the same firearms that either were stolen in . . . or used to commit the murder/robbery" and because "the Government allege[d] that [defendants] committed the robbery and murder in order to obtain firearms so that those firearms could be sold for cash").

Bowman argues that the Government "does not connect what overt acts [in] Counts 27-28" furthered the mail fraud and firearms conspiracies and that the mail fraud conspiracy and murder-for-hire conspiracy were not "being perpetrated by virtue of either possession of drugs or firearms." ECF No. 528 at 6. This argument misses the mark. It presumes, without citation to authority, that the Government must charge that all of the alleged conspiracies operated together, in a mutually-reinforcing, "belt and suspenders" manner, towards a single overarching goal in order for joinder to be proper.

While it is true that "the mere fact that two conspiracies have overlapping memberships will not authorize a single indictment if the conspiracies cannot be tied together into . . . one common plan or scheme," *Velasquez*, 772 F.3d at 1353, the Government has done more than just assert "overlapping memberships" here. The Government has asserted that other conspiracies flowed from and indeed were made possible by the initial mail fraud conspiracy. That, in this Court's view, is sufficient to support joinder of all charges.[7]

The Court also rejects Jackson's undeveloped argument that the Government's factual proffer "fails to support [its] averment" that the fraud scheme proceeds financed other conspiratorial acts. ECF No. 556 at 2. The factual proffer makes clear what evidence the Government has to support its theory and explains why it believes this evidence will be relevant and persuasive. Assuming this evidence is admissible—an issue that the Court does not address at this time—it might prove what the Government says it

---

[7]This conclusion holds regardless of whether the Indictment's references to Defendants' gang activity are stricken or remain. *See infra* Section 3.5.

proves, or it might not. But the appropriate place for Defendants to challenge the sufficiency of the Government's evidence to illustrate its theory of the case, which is what Jackson seems to do, is at trial, not through a severance motion.

For all these reasons, the Court finds that joinder of all charges asserted against Defendants is proper under Rule 8(a) and will serve the interests of judicial economy by furthering efficient resolution of this case. The Court further rejects any argument that the charges should nonetheless be severed under Rule 14 to allay the risk of prejudice. Only Bowman raises this argument, and only then in passing. ECF No. 557 at 3. He asserts only that the Government will use "the purported misappropriated unemployment funds to improperly secure a homicide conviction." *Id.* But Bowman does not explain how this could be, when the mail fraud and murder-for-hire conspiracies will require proof of different elements. In other words, the Government will not be able to prove the murder-for-hire offense by simply asserting that Defendants funded it with the proceeds of the mail fraud conspiracy; the Government will have to prove two distinct elements for Defendant to be convicted of the murder-for-hire conspiracy. *See Caguana*, 884 F.3d at 687. Bowman's concerns are best addressed through jury instructions and opening and closing arguments.

Accordingly, Defendants' motions to sever counts, ECF Nos. 517 and 528, will be denied.

### 3.3    Jackson's Motions to Compel

Jackson next moves to compel the Government to disclose the identities of various cooperating witnesses, ECF No. 527, and discovery

material related to these witnesses such as statements that may bear on their credibility or be exculpatory or favorable to him, ECF No. 523.[8]

The Government has a limited privilege to "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957) (citing *Scher v. United States*, 305 U.S. 251, 254 (1938); *In re Quarles and Butler*, 158 U.S. 532 (1985); and *Vogel v. Gruaz*, 110 U.S. 311, 316 (1884)). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. . . [,] recogniz[ing] the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourag[ing] them to perform that obligation." *Id.* The Court decides whether disclosure is appropriate by balancing "the public interest protecting in the flow of information against the [defendant's] right to prepare his defense," taking into account "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62. The Government's privilege "gives way once the defendant proves that the disclosure of the informant's identity 'is relevant and helpful' to his defense 'or is essential to a fair determination of a cause.'" *United States v. Bender*, 5 F.3d 267, 269 (7th Cir. 1993) (quoting *Roviaro*, 353 U.S. at 60–61) and citing *United States v. Andrus,* 775 F.2d 825, 841–42 (7th Cir. 1985)).

---

[8]Jackson does not state whether he conferred with the Government about these requested disclosures before filing his motions as required under Criminal Local Rule 16(b). Nevertheless, the parties address the motions on their merits and so will the Court.

Additionally, the Government is required to disclose to Jackson potentially exculpatory or credibility-related information about cooperating witnesses. *United States v. Burnside*, 824 F. Supp. 1215, 1250 (N.D. Ill. 1993) ("[T]he Supreme Court held in *Brady v. Maryland,* 373 U.S. 83, [88] . . . (1963) that due process requires the prosecution to provide the defense upon request any evidence favorable to the accused which is material either to guilt or to punishment. . . . [I]n *Giglio v. United States,* 405 U.S. 150, [154] . . . (1972), the Supreme Court held that the government's *Brady* obligation to provide evidence to the defense encompasses evidence affecting a government witness' credibility.").

Jackson lists the statements of ten cooperating witnesses who "claim to have direct knowledge of [his] involvement" in the killing of N.B. ECF No. 527 at 5. He says that these witnesses' identities are subject to disclosure because "[s]tatements of individual[]s who cooperate are inherently suspect" and he needs time to prepare his defense by examining these statements for "corroboration or lack thereof," which requires that he know the identities of the witnesses who made the statements. *Id.* With respect to exculpatory or credibility-related information from these witnesses, he represents that in May 2023 he served a detailed discovery demand on the Government for this information, to which it did not respond. ECF No. 523 at 4 (citing ECF No. 523-1 at 3–7).

The Government counters that, regardless of whether these cooperating witnesses are "'transactional witnesses (i.e., those who participated in the crime charged against the defendant)" or "mere 'tipsters' (i.e., those whose only role was to provide the police with information)," disclosure is inappropriate due to the risk of retaliation against cooperating witnesses. ECF No. 543 at 15–18 (citing *United States v. McDowell*, 687 F.3d

904, 911 (7th Cir. 2012); *United States v. Wilburn*, 581 F.3d 618, 623 (7th Cir. 2009); and *United States v. Jefferson*, 252 F.3d 937, 941 (7th Cir. 2001) and noting that the privilege against disclosure is stronger for "tipsters" and weaker for "transactional" witnesses). It argues that there are "case-specific" reasons for shielding cooperating witnesses' identifies here, namely, Jackson's "violent histor[y]" as demonstrated by the murder-for-hire charge he is facing as well as "numerous shootings and other homicides committed by members of the Wild 100s," of which he is allegedly a part. *Id.* at 16–17. It further notes that another co-defendant in this case in fact explicitly threatened a cooperating witness and as a result was subject to an obstruction enhancement at sentencing. *Id.* at 17 (citing ECF No. 337-1). Jackson argues in reply that these risks are not specific enough *to him* to justify nondisclosure. ECF No. 556 at 5.

All that said, the Government states that it "has agreed to disclose the transactional cooperating witnesses' identities, and the identities of those cooperating witnesses [it] intends to call at trial, to each impacted defendant thirty days prior to trial," together with "all *Brady* and *Giglio* information, to the extent it has not already been disclosed." ECF No. 543 at 18. It asserts that this offer "comports with past practice in this District." *Id.* (citing *United States v. Yager*, No. 97-CR-98-JPS, 2015 WL 6680251, at *5–7 (E.D. Wis. Nov. 2, 2015)). Jackson argues in reply that, due to the "compressed [trial] schedule" in this matter, this is not soon enough to permit him sufficient time to review the material. ECF No. 556 at 5.

Jackson has made a threshold showing that the cooperating witnesses' identities, and discovery material related to their credibility or which tends to be exculpatory, is "relevant and helpful" to his defense. *Roviaro*, 353 U.S. at 60. While his statement that cooperating witnesses'

statements are "inherently suspect" is unsupported by any legal authority and fails to address the nuances between the trustworthiness of "transactional" versus mere "tipster" witnesses, as discussed above, the Court agrees that Jackson should be able to know the witnesses' identities for the purpose of determining whether there is corroboration for their statements, and/or information going to their credibility, in the discovery material.

Likewise, the Government has established that disclosure of cooperating witness identities poses a risk. Jackson is charged with a violent crime—notably, though, not against a law enforcement cooperator—and is alleged to associate with other individuals who both threaten and actually use violence against people who cooperate with law enforcement. *See Yager*, 2015 WL 6680251, at *6 (finding that similar, generalized risks of retaliation outweighed the defendant's interest in disclosure and denying motion to compel without prejudice).

At this time, however, the Court declines to decide whether the balance of interests tips in favor of Jackson or the Government. In light of the Government's agreement to disclose witness identities and any remaining *Brady* and *Giglio* material thirty days before trial, the Court will deny Jackson's motions to compel, ECF Nos. 518 and 526, without prejudice.

### 3.4     Jackson's Motion to Dismiss Count Twenty-Nine

Jackson also moves to dismiss Count Twenty-Nine, the firearms conspiracy charge, because it "sets forth four alternative statutory violations which the charged defendants conspired to commit" but does not "identify which of the four statutory provisions [he] is claimed to have violated," nor does it "describe any action on [his] part" or identify his

"involvement in the conspiracy as a whole." ECF No. 524 at 2. The Government understands Jackson to be arguing that Count Twenty-Nine is duplicitous. ECF No. 543 at 20.

"An indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (citing Fed. R. Crim. P. 7(c)(1) and *United States v. Smith,* 230 F.3d 300, 305 (7th Cir. 2000)).

"An indictment that charges two or more distinct offenses within a single count is duplicitous." *United States v. Hassebrock*, 663 F.3d 906, 916 (7th Cir. 2011) (citing *United States v. Smith*, 26 F.3d 739, 753 (7th Cir. 1993)). "However, an indictment charging multiple acts in the same count, each of which could be charged as a separate offense, may not be duplicitous where these acts comprise a continuing course of conduct that constitutes a single offense." *United States v. Buchmeier*, 255 F.3d 415, 421 (7th Cir. 2001) (citing *United States v. Berardi*, 675 F.2d 894, 898 (7th Cir. 1982)).

The Government argues that Count Twenty-Nine is sufficiently alleged. It notes that in a conspiracy count, "the crime 'is the agreement itself.'" ECF No. 543 at 20 (quoting *United States v. Corson*, 579 F.3d 804, 810 (7th Cir. 2009)). As such, it argues that Count Twenty-Nine is not duplicitous and that it has permissibly charged Jackson with "a single offense carried out through many different means" and that it need prove only that he "conspired with a conspirator to commit one of those offenses." *Id.* at 21 (first quoting *United States v. Davis*, 471 F.3d 783, 790 (7th Cir. 2006) then quoting *United States v. Sababu*, 891 F.2d 1308, 1326 n.5 (7th Cir. 1989)).

The Court agrees. As noted *supra* Section 3.1, the elements of a conspiracy charge are existence of the conspiracy, Jackson's knowing and willful joining of the conspiracy with intent to further it, and at least one overt act committed by any member of the conspiracy in furtherance thereof. *See Kruse*, 606 F.3d at 408. Count Twenty-Nine tracks these elements and alleges that Jackson, the co-defendants charged therein, and others conspired to commit four separate firearms offenses over a period of almost three years. ECF No. 1 at 12. Subsequent counts charge some of the co-defendants named in Count Twenty-Nine—though not Jackson—with various substantive gun offenses and allege that these offenses occurred during the time frame stated in Count Twenty-Nine. *Id.* at 14–16, 18–23, 25–27. Presumably, some or all of these gun offenses were the fruits of the conspiracy alleged in Count Twenty-Nine. *See United States v. Donagher*, 520 F. Supp. 3d 1034, 1041 (N.D. Ill. 2021) ("Indictments are reviewed on a practical basis and in their entirety . . . ." (quoting *Smith*, 230 F.3d at 305)).

Jackson is "correct that an indictment can be duplicitous if numerous discrete instances of criminal conduct are lumped into a single count[, such as] where the indictment allege[s] several instances of criminal conduct, involving multiple defendants, multiple locations, and multiple dates." *Davis*, 471 F.3d at 790 (citing *United States v. Tanner*, 471 F.2d 128, 138–39 (7th Cir. 1972)). But that is not what Count Twenty-Nine does. Rather, Count Twenty-Nine alleges that Jackson and others *agreed* to commit offenses in violation of various firearm laws. The agreement itself is the alleged crime. *Corson*, 579 F.3d at 810. Count Twenty-Nine alleges that this agreement occurred (and the subsequent counts allege that it was brought to fruition) over a "discrete period of time" in a "continuing course of

conduct." *Davis*, 471 F.3d at 790–91 (quoting *Berardi*, 675 F.2d at 898). Count Twenty-Nine is not improperly duplicitous.

Jackson's other argument, that Count Twenty-Nine fails to apprise him of a specific act or acts he took in furtherance of the alleged conspiracy, also fails. Again, the Government must charge and eventually prove Jackson's knowing and willful joining of the conspiracy with intent to further it, and at least one overt act committed by any member of the conspiracy in furtherance thereof. *See Kruse*, 606 F.3d at 408. The act or acts that the Government asserts will prove Jackson's conspiratorial intent remain to be seen, but need not be alleged in the Indictment. For these reasons, Jackson's motion to dismiss Count Twenty-Nine, ECF No. 519, will be denied.

### 3.5 Defendants' Motions to Strike Surplusage from the Indictment

Finally, Defendants move to strike from the "Background Allegations" that precede Count One a paragraph which references their involvement in the Wild 100s gang and gang activity such as "crimes of violence, illegal firearms possession, drug distribution, conspiracy, and fraud." ECF Nos. 525, 529.

"Upon the defendant's motion, the court may strike surplusage from the indictment . . . ." Fed. R. Crim. P. 7(d). "Surplusage" means "immaterial or irrelevant allegations . . . which may . . . be prejudicial." 1944 Advisory Committee Note to Fed. R. Crim. P. 7(d). "A motion to strike surplusage should be granted only if the targeted allegations are *clearly not* relevant to the charge *and* are inflammatory and prejudicial." *United States v. Chaverra-Cardona,* 667 F. Supp. 609, 611 (N.D. Ill. 1987) (citing 1 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Crim. 2d

§ 127, at 425–27 (5th ed. 1982) and *United States v. Brighton Bldg. & Maintenance Co.*, 435 F. Supp. 222, 230–31 (N.D.Ill.1977), *aff'd*, 598 F.2d 1101 (7th Cir.), *cert. denied*, 444 U.S. 840 (1979)) (emphasis added). "[T]his is a rather exacting standard, and only rarely has surplusage been ordered stricken." *Id.* (citation omitted).

Defendants argue that the subject language preceding Count One has nothing to do with the mail fraud allegations in Count One, and in addition to being irrelevant, is prejudicial and will lead the jury to draw improper inferences or rely on bias. ECF No. 525 at 1–2; ECF No. 529 at 2. The Government counters that the subject language is legally and factually relevant because it explains how "Count One . . . [is] inextricably linked to the other crimes charged in the Indictment" and that "[t]his language explains how the Defendants used the proceeds of the mail fraud to engage in criminal activity." ECF No. 543 at 22–23. Jackson, in reply, argues that "this . . . assertion is unsupported . . . ." ECF No. 556 at 3. Bowman, on the other hand, "agrees that this [language] may be relevant" at trial as to Counts One, Two as it pertains to him, and Twenty-Nine *if* Defendants are tried for those counts separately from Counts Twenty-Seven and Twenty-Eight, but that is irrelevant to Counts Twenty-Seven and Twenty-Eight. ECF No. 557 at 5–6.

The Government further comments that any prejudice that may result from retaining the language can be addressed by instructing the jury or jury panel to limit its consideration of the Indictment or by deferring ruling on the motions "unless and until the evidentiary record at trial reflects a genuine dispute between the parties as to whether the Defendants engaged in crimes of violence." ECF No. 543 at 23 (citing Seventh Cir.

Case 2:23-cr-00077-JPS   Filed 10/07/24   Page 26 of 31   Document 597

Pattern Crim. Jury Instructions 1.02 (2023)). Jackson replies that these proposed solutions would be too little too late. ECF No. 556 at 3.

As a threshold matter, it is not clear from the Indictment that the subject language is only asserted in relation to Count One. The "Background Allegations" section in which it appears precedes Count One and raises allegations about what occurred "[a]t times material to this Indictment." ECF No. 1 at 2–3. But the Government does not quibble with Defendants on this point, so the Court will not address it further. In any event, the allegation that Defendants, as part of the Wild 100s, engaged in various criminal activities "including . . . fraud" is clearly relevant to Count One, which asserts that they "communicated about and taught each other how to submit fraudulent [unemployment] claims," collected the proceeds of those fraudulent claims, and then used the proceeds "to purchase . . . firearms . . . and to solicit murder for hire." *Id.* at 4–5. "The source of the money involved is directly relevant to . . . the means used in the conspiracy . . . [and] with regard to explaining the purpose behind the . . . scheme . . . ." *United States v. Bucey*, 691 F. Supp. 1077, 1082 (N.D. Ill. 1988).

Further, as the Government explained with respect to Defendants' motions for a bill of particulars, it intends to show at trial that the murder-for-hire plot is (1) interrelated with the mail fraud charge in that the fraud proceeds allegedly financed the murder-for-hire plot and (2) part of Wild 100s gang activity because the murder-for-hire was supposedly committed against an individual associated with a member of a rival gang. ECF No. 543 at 9–12. The Court cannot conclude that the subject language in the Indictment is irrelevant, because it "elaborate[s] the nature of [Defendants'] fraudulent activity." *United States v. Quintanilla*, 2 F.3d 1469, 1475 (7th Cir. 1993) (citing *United States v. Lennon*, 814 F.2d 185, 190 (5th Cir. 1987), *cert.*

*denied*, 484 U.S. 928). Additionally, evidence related to Counts One, Twenty-Seven, Twenty-Eight, and Twenty-Nine is likely to be "blended or connected" such that "proof of one incidently [sic] involves the other[,] explains the circumstances thereof[,] or tends logically to prove any element of the [others]." *Bucey*, 691 F. Supp. at 1082 (quoting *United States v. Dorn*, 561 F.2d 1252, 1258 (7th Cir. 1977) and citing *United States v. Moreno-Nunez*, 595 F.2d 1186, 1188 (9th Cir. 1979) and *United States v. Wilson*, 578 F.2d 67, 72 (5th Cir. 1978)).

The Court also cannot conclude that the subject language is prejudicial to Defendants, as it in large part simply summarizes the conduct—fraud, a crime of violence (murder for hire), illegal firearms possession, and conspiracy—of which they stand accused in the Indictment. The subject language also includes a reference to "drug distribution,"[9] conduct which is substantively charged only against different co-defendants in Counts Thirty-Three and Forty and not against Defendants. But the Court also cannot conclude that this reference to "drug distribution" as an activity in which Defendants were involved is entirely irrelevant because Count Twenty-Nine charges Defendants with conspiring to transfer firearms "knowing that such firearm would be used to commit a . . . drug trafficking crime." ECF No. 1 at 12.

Jackson's argument that the Government's proposed methods of preventing or addressing prejudice are insufficient is also unconvincing. The jury will be instructed that the Indictment "is not evidence that [Defendants are] guilty" and to consider only the evidence they see and

---

[9] Paragraph 7(g) of Count One also refers to "controlled substances." ECF No. 1 at 5. Defendants do not seek to strike this language.

hear in court to decide whether the Government has proven beyond a reasonable doubt each of the elements of the offenses at issue. Seventh Cir. Pattern Crim. Jury Instructions 1.02, 2.01 (2023). If Defendants are concerned that particular pieces of evidence will lead the jury to make impermissible inferences or connections between the offenses with which they are charged and alleged gang activity that is outside the scope of this prosecution, they should raise appropriate objections through motions in limine and/or at trial.

For all these reasons, Defendants' motions to strike surplusage in the Indictment, ECF Nos. 520 and 529, will be denied.

**4.     CONCLUSION**

For the reasons stated above, each of Defendants' motions will be denied, with the denial of Jackson's motions to compel to operate without prejudice.

Because the original deadline for Defendants to file plea agreements and remain eligible for acceptance of responsibility credit has now passed, ECF No. 500 at 6, and to afford Defendants sufficient time to confer with counsel and the Government to decide whether to resolve this case short of trial, the Court will extend the plea deadline until the close of business on **October 15, 2024**. The rest of the deadlines and dates in the Trial Scheduling Order remain in place, and the plea agreement deadline is not changed as to any other co-defendant in this case.

Accordingly,

**IT IS ORDERED** that Defendant Ronnell Bowman's motion for a bill of particulars, ECF No. 514, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Ronnie Jackson's motion for a bill of particulars, ECF No. 516, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Ronnie Jackson's motion to sever counts, ECF No. 517, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Ronnie Jackson's motion to compel disclosure of certain discovery material, ECF No. 518, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Defendant Ronnie Jackson's motion to dismiss Count Twenty-Nine of the Indictment, ECF No. 519, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Ronnie Jackson's motion to strike surplusage from the Indictment, ECF No. 520, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Ronnie Jackson's motion to compel disclosure of cooperating witness identities, ECF No. 526, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Defendant Ronnell Bowman's motion to sever counts, ECF No. 528, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Ronnell Bowman's motion to strike surplusage from the Indictment, ECF No. 529, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the Trial Scheduling Order, ECF No. 500, is **MODIFIED** as follows: Defendants Ronnell Bowman and Ronnie Jackson shall have until the close of business on **October 15, 2024** to file any plea agreement(s) and remain eligible for acceptance of

responsibility credit; the rest of the deadlines and dates in the Trial Scheduling Order remain in place.

Dated at Milwaukee, Wisconsin, this 7th day of October, 2024.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge